LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| GENT HAJDARAJ and ENDRI HOXHA, *on behalf of themselves, FLSA Collective Plaintiffs and the Class,* | Case No: |
| Plaintiff, | **CLASS AND COLLECTIVE** |
| v. | **ACTION COMPLAINT** |
| A & B RESTAURANT GROUP LLC   d/b/a BENJAMIN STEAK HOUSE SSAP LLC   d/b/a BENJAMIN STEAK HOUSE II B AND B RESTAURANT GROUP LLC,   d/b/a BENJAMIN STEAKHOUSE III AP & SS RESTAURANT GROUP LLC   d/b/a THE SEAFIRE GRLL, BENJAMIN RESTAURANT GROUP LLC, ALBAN PRELVUKAJ, and ABNESHE SINANAJ | |
| Defendants. | |

---

Plaintiffs, GENT HAJDARAJ and ENDRI HOXHA, ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against A & B RESTAURANT GROUP LLC d/b/a BENJAMIN STEAK HOUSE, SSAP LLC d/b/a BENAMIN STEAK HOUSE II, B AND B RESTAURANT GROUP LL d/b/a BENJAMIN STEAKHOUSE III, AP & SS RESTAURANT

GROUP LLC d/b/a THE SEAFIRE GRLL, BENJAMIN RESTAURANT GROUP LLC, (the "Corporate Defendants") and ALBAN PRELVUKAJ, and ABNESHE SINANAJ (the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid wages due to invalid tip credit, (3) unpaid spread of hours premium, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      Plaintiff GENT HAJDARAJ, for all relevant time periods, was a resident of Suffolk County, New York.

6.      Plaintiff ENDRI HOXHA, for all relevant time periods, was a resident of New York County, New York.

7.     Defendants collectively own and operate a group of restaurants at the following locations in New York State:

(a) 52 East 41st Street, New York, NY 10017 ("Benjamin Steakhouse");

(b) 610 W Hartsdale Ave, White Plains, New York 1060 ("Benjamin Westchester");

(c) 23 East 40th Street, New York, NY 10017 ("Benjamin Prime"); and

(d) 158 East 48th Street, New York, NY 10017 ("Seafire Grill");

(collectively, the "Restaurants").

8.     All the Restaurants belong to Corporate Defendant BENJAMIN RESTAURANT GROUP LLC, which is owned and operated by Individual Defendants. The Restaurants are operated as a single integrated enterprise, under the common control of the Individual Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose:

a.   All the Restaurants have been found, owned and operated as a family business for fourteen (14) years by Individual Defendants, ALBAN PRELVUKAJ, SHABAN SINANAJ and ABNESHE SINANAJ. *See* **Exhibit A** for a brief history of the Restaurants.

b.   All the Restaurants use a central marketing department. *See* **Exhibit B** for all the Restaurants' joint usage of "NJ Marketing Company CMDS" to create its marketing materials.

c.   All the Restaurants receive legal advice from the General Counsel of the Restaurants' corporate headquarters, who oversees legal compliance for all the Restaurants. *See* **Exhibit C** for the Restaurants' legal terms and policies,

privacy policy, and frequently asked questions which are shared amongst all the Restaurants.

d.  All paychecks of Restaurant employees are issued through the payroll department of the Restaurants' corporate headquarters.

e.  Prior to opening, all new Restaurants must be approved by Individual Defendants, ALBAN PRELVUKAJ, SHABAN SINANAJ and ABNESHE SINANAJ.

f.  Three (3) of the four (4) Restaurants share the same brand name with the same logo ("Benjamin Steakhouse, A Cut Above the Rest") and are marketed jointly on one (1) common website: www.benjaminsteakhouse.com ("Website"). Also, the remaining restaurant, Sea Fire Grill, is jointly advertised on the Website, and Benjamin Steakhouse is jointly advertised on The Sea Fire Grill website as well: www.theseafiregrill.com (together with the Website, "Websites"). *See* **Exhibit D** for the Restaurants' brand names and logos on the Websites, all jointly advertised on each of the Websites.

g.  All the Restaurants' location information is accessible through a few simple clicks from the Website. *See* **Exhibit E** for the location information of all the Restaurants.

h.  All the Restaurants share common "Contact Us" webpages on the Websites. For instance, the "Contact Us" webpage (www.theseafiregrill.com/contactus/) of the Sea Fire Grill jointly exhibits contact email addresses of both brands: samantha@benjaminsteakhouse.com and events@theseafiregrill.com. *See*

**Exhibit F** for the "Contact Us" webpage, which shows joint contact information for all the Restaurants.

i. All the Restaurants share a common email newsletter, through which all the Restaurants send relevant information about all four (4) Restaurants. *See* **Exhibit G** for the online forms to sign up for the common newsletter on the Websites.

j. Three (3) of the four (4) Restaurants' menus—which share similar steakhouse dishes at similar prices—are exhibited on the Website. The Sea Fire Grill's steak menus also share similar dishes at similar prices as the rest of the Restaurants.  *See* **Exhibit H** for the Restaurants' menus.

k. All the Restaurants share a common look and feel that have been inspired by quintessential New York dining experience and classic steakhouse cuisine. *See* **Exhibit I** for the Restaurants' inspirations.

l. Three (3) of the four (4) Restaurants share a common OpenTable reservation system to make reservations for each of the Restaurants. *See* **Exhibit J** for the Restaurants' reservation pages on the common Website.

m. All the Restaurants offer their venues for private parties and events on the Websites. Any event inquiries for three (3) of the four (4) Restaurants are directed to the same contact information: events@benjaminsteakhouse.com. *See* **Exhibit K** for the event inquiry forms of all four (4) Restaurants, all of which appear identical.

n. Three (3) of the four (4) Restaurants share the same Facebook, Twitter, Instagram, and other social media accounts. *See* **Exhibit L** for the three (3) Restaurants' common Facebook, Twitter, and Instagram accounts.

o. Three (3) of the four (4) Restaurants sell gift cards from one (1) common page of the Website. *See* **Exhibit M** for how to buy gift cards on the Website.

p. Three (3) of the four (4) Restaurants share one (1) joint online form to allow online orders of different sizes of steaks, for same prices amongst the different locations. *See* **Exhibit N** for the online ordering form on the Website.

q. All the Restaurants share the exact same COVID-19 notice on their Websites. *See* **Exhibit O** for the Benjamin Steakhouse notice appearing on The Sea Fire Grill website.

r. The Sea Fire Grill "follows the [blue] formula" which is derived from the brown formula of Benjamin Steakhouse, as they are both owned and operated by the same owners. *See* **Exhibit P** for a New York Times article that mentions this relationship.

s. All the Restaurants use the same takeout bags and umbrella covers, which advertise all the locations. *See* **Exhibit Q** for the takeout bags and umbrella covers.

t. The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) whenever one (1) location is

short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs.

u. Employees were regularly required to transport items between Restaurant locations, in accordance with the directives of central management, including the Individual Defendants, ALBAN PRELVUKAJ, SHABAN SINANAJ and ABNESHE SINANAJ.

9.      Corporate Defendant A & B RESTAURANT GROUP LLC d/b/a BENJAMIN STEAK HOUSE, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business located at 52 East 41st street, New York, NY 10017.

10.      Corporate Defendant SSAP LLC d/b/a BENAMIN STEAK HOUSE II is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business at 610 W Hartsdale Ave, White Plains, New York 10607.

11.      Corporate Defendant B AND B RESTAURANT GROUP LLC, d/b/a BENJAMIN STEAKHOUSE III, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process at c/o SHABAN SINANAJ 21 Bramblebrook Road, Ardsley, New York, 10502 an a principal place of business at 23 East 40th Street, New York, NY 10017.

12.      Corporate Defendant AP & SS RESTAURANT GROUP LLC d/b/a THE SEAFIRE GRLL, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business at 158 East 48th Street, New York, NY 10017.

13.     Corporate Defendant BENJAMIN RESTAURANT GROUP LLC is a domestic limited liability company with an address for service of process and a principal place of business at 143 East 47th Street, New York, NY 10017.

14.     Individual Defendant ALBAN PRELVUKAJ is an owner and principal of each of the Corporate Defendants. ALBAN PRELVUKAJ exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Individual Defendant frequently visits each of the Restaurants. Individual Defendant exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to ALBAN PRELVUKAJ directly regarding any of the terms of their employment, and ALBAN PRELVUKAJ would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

15.     Individual Defendant ABNESHE SINANAJ is an owner and principal of each of the Corporate Defendants. ABNESHE SINANAJ exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Individual Defendant frequently visits each of the Restaurants. ABNESHE SINANAJ exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to ABNESHE SINANAJ directly regarding any of the terms of their employment, and ABNESHE SINANAJ would have the

authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

16.     At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

17.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees  (including but not limited to servers, bussers, runners, dishwashers, cooks, food preparers, hosts, bartenders, and barbacks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages due to time shaving. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21.     Plaintiffs brings claims for relief as a collective action pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees  (including but not limited to servers, bussers, runners, dishwashers, cooks, food preparers, hosts, bartenders, and barbacks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("Class" or "Class Members").

22.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff ENDRI HOXHA is a member of the Tipped Subclass. Plaintiff GENT HAJDARAJ is a member of both the Class and the Tipped Subclass.

24.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to Defendants' corporate practices of (i) failing to pay wages due to time-shaving, (ii) failing to pay spread of hours premium, (iii) failing to provide wage statements per requirements of the New York Labor Law, and (iv) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25.     With regard to Plaintiffs GENT HAJDARAJ and ENDRI HOXHA, and the Tipped Subclass, Defendants failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under the New York Labor Law. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, (iv) failed to accurately keep track of daily tips earned and maintain records thereof and (v) instituted a improper tip pooling scheme, whereby non-tipped employees participated in the tip pool.

26.     Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> (a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

> (b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

> (c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

> (d) Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

> (e) Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked;

(f)   Whether Defendants paid Plaintiffs and Class members the New York State "spread of hours" premium when their workdays exceeded ten hours;

(g)   Whether Defendants properly provided notice to Plaintiff and the Tipped Subclass that Defendants were taking a tip credit;

(h)   Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and the Tipped Subclass members were required to share tips earned with non-tipped employees;

(i)   Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

(j)   Whether Defendants required Plaintiff and the Tipped Subclass members to engage in non-tipped duties exceeding 20% of each workweek;

(k)   Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

(l)   Whether Defendants provided proper wage statements informing (i) Plaintiff and the Tipped Subclass of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law; and

(m) Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

### **STATEMENT OF FACTS**

31.   Plaintiff GENT HAJDARAJ

(a) In or around January 2010, Plaintiff GENT HAJDARAJ was hired by Defendants to work as a server at Defendants' BENJAMIN STEAKHOUSE, located at 52 East 41st Street, New York, NY 10017. On or around January 27, 2020, Plaintiff's employment was terminated.

(b) Although Plaintiff worked primarily at the "BENJAMIN STEAKHOUSE" location at 52 East 41st Street, New York, NY 10017, Plaintiff worked interchangeably at all of Defendants restaurants as needed.

(c) Throughout his employment, by Defendants, Plaintiff GENT HAJDARAJ was scheduled to work six (6) days per week. Plaintiff worked Tuesdays to Thursdays, from 11:00 a.m. to 10:00 p.m. Plaintiff worked Fridays to Sundays from 4:00 p.m. to 11:00 p.m. Plaintiff worked approximately fifty-four (54) hours per week. Prior to 2017, Plaintiff did not clock in or out per Defendants' policies. Only starting in 2017 did Defendants' require Plaintiff to clock in and out.

(d) Starting in 2017, Plaintiff GENT HAJDARAJ was not properly compensated his proper wages for all hours worked, due to Defendants' policy of time-shaving. Plaintiff was constantly required to clock out and work off the clock. Plaintiff's General Manager, Mario Last Name Unknown ("LNU"), would tell Plaintiff "if you want to work more and make more money, don't clock in." As a result, Plaintiff was only compensated for approximately thirty (30) to thirty-two (32) hours per week, despite working approximately fifty-four (54) hours per week. FLSA Collective Plaintiffs and Class members were similarly required to work off the clock and were not paid their proper wage.

(e) Throughout his employment, Plaintiff GENT HAJDARAJ worked over ten (10) hours per day at least three (3) times per week. However, Plaintiff never received any spread of hours payments for the days he worked over ten hours. Similarly, Class members failed to receive their spread of hours premiums when working days of ten (10) or more hours.

32.     Plaintiff ENDRI HOXHA

(a) In or around November 2015, Plaintiff ENDRI HOXHA was hired by Defendants to work as a busser. Plaintiff worked interchangeably at both Defendants' BENJAMIN STEAKHOUSE, located at 52 East 41st Street, New York, NY 10017 and Defendants' BENJAMIN PRIME, located at 23 East 40th Street, New York, NY 10017. On or around May 20, 2018, Plaintiff's employment was terminated.

(b) Throughout his employment, Plaintiff was scheduled to work five (5) days per week, from 5:00 p.m. to 12:00 a.m. Plaintiff worked approximately thirty-five (35) hours per week.

33.     Throughout their employment, Plaintiffs GENT HAJDARAJ and ENDRI HOXHA were paid at the tip credit minimum wage.

34.     Plaintiffs GENT HAJDARAJ, ENDRI HOXHA and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respects to Plaintiff and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the NYLL because Defendants (i) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the NYLL, (ii) failed to accurately track daily tips earned or maintain

records thereof, (iii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, (iv) failed to provide a proper wage statement with every payment of wages informing tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL, and (v) instituted a improper tip pooling scheme whereby non-tipped employees participated in the tip pool.

35.     Plaintiff GENT HAJDARAJ, ENDRI HOXHA and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including cleaning and refilling napkin containers, polishing the glassware and silverware, sweeping and mopping the restaurant, and cleaning and wiping the menus,. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees

36.     Plaintiff GENT HAJDARAJ, ENDRI HOXHA and the Tipped Subclass suffered from Defendants' improper tip pooling scheme. Defendants included employees who were not tipped employees into the tip pooling scheme. Specifically, Defendants included food preparers in the kitchen who were cutting meat and preparing foods into the tip pool and labeled them as "food runners" so that they could participate.

37.     Plaintiff GENT HAJDARAJ and Class members regularly worked days that exceed ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff and Class members the spread of hours premium for workdays that exceeded ten hours in length.

38.     Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and annually thereafter. Plaintiff did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

39.     Plaintiff and Class members received wage statements that were not in compliance with the New York Labor Law. Defendants are required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Plaintiff and Class members also received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiff and Class members.

40.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, to Plaintiff and the Tipped Subclass members as Defendants were not entitled to claim any tip credits under the FLSA or NYLL.

41.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked.

42.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff and Class members, in violation of the NYLL.

43.     Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under the New York Labor Law.

44.     Defendants knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiff and Class members at the beginning of employment and annually thereafter, in violation of the NYLL.

45.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

46.     Plaintiffs reallege and reaver Paragraphs 1 through 45 of this Class and Collective

Action Complaint as if fully set forth herein.

47.     At all relevant times, Defendants were and continue to be employers engaged in

interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are

covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective

Plaintiffs within the meaning of the FLSA.

49.     At all relevant times, each Corporate Defendant had gross annual revenues in

excess of $500,000.00.

50.     At all relevant times, the Defendants engaged in a policy and practice of refusing

to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours that they worked each week

due to a policy of time-shaving.

51.     Plaintiffs are in possession of certain records concerning the number of hours

worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff

and FLSA Collective Plaintiffs. Further records concerning these matters should be in the

possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate

discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of

Court to amend this Complaint to set forth the precise amount due.

52.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

53.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

54.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to time-shaving, and an equal amount as liquidated damages.

55.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR

56.     Plaintiffs reallege and reaver Paragraphs 1 through 55 of this Class and Collective Action Complaint as if fully set forth herein.

57.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

58.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper wages for all of their hours worked due to Defendants' policy of time shaving.

59.     Defendants willfully violated Plaintiff's and the Tipped Subclass members' rights by failing to pay them minimum wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

60.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

61.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

62.     Defendants failed to provide proper wage statements with correct payment as required by New York Lab. Law § 195(3).

63.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages due time shaving, unpaid wages due to invalid tip credit, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid compensation due under the FLSA and NYLL due to Defendants' policy of time-shaving;

d. An award of unpaid compensation due under the FLSA and NYLL due to Defendants' invalid tip credit;

e. And award of unpaid spread of hours premium due under the NYLL;

f.   An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, pursuant to 29 U.S.C. § 216;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, and compensation for all hours of work, pursuant to the New York Labor Law;

i.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.   Designation of this action as a class action pursuant to F.R.C.P. 23;

l.   Designation of Plaintiff as Representative of Class; and

m.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 18, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By: */s/ C.K. Lee*_____
    C.K. Lee (CL 4086)

</div>